**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANTONIO U. AKEL,<br><br>   *Plaintiff*,<br><br> v.<br><br>UNITED STATES DEPARTMENT OF<br>JUSTICE,<br><br>   *Defendant*. | Civil Action No. 20-3240 (RDM) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Antonio Akel is a federal prisoner currently serving a term of 480 months' imprisonment for three drug and firearms convictions. *See United States v. Akel*, 787 F. App'x 1002, 1004 (11th Cir. 2019). Plaintiff speculates that the federal prosecutors in his case engaged in inappropriate, *ex parte* communications with the presiding judge over the course of his criminal proceedings. In June and July 2020, Plaintiff submitted two requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to the U.S. Department of Justice ("the Department"), seeking all *ex parte* communications about his criminal case between the U.S. Attorney's Office for the Northern District of Florida (the "U.S. Attorney's Office" or the "Office") and the U.S. District Court for the Northern District of Florida using official Department email accounts. The Department conducted a search for responsive material, after which it informed Plaintiff that it was unable to locate any responsive records. Plaintiff exhausted his administrative remedies and then brought the present action, in which he claims that the Department's search was inadequate largely because the Department did not search for

records in an email archive system and declined to search the emails of one prosecutor who is no longer employed by the Department.

This matter is before the Court on the parties' cross-motions for summary judgment. *See* Dkt. 18; Dkt. 23. For the reasons set forth below, the Court will **GRANT** in part and **DENY** in part the Department's motion for summary judgment, Dkt. 18, and will **GRANT** in part and **DENY** in part Plaintiff's cross-motion for summary judgment, Dkt. 23.

## I. BACKGROUND

On June 10, 2020 and July 22, 2020, Plaintiff submitted two letters to the Department of Justice, in which he sought

> all ex parte communications between the U.S. Attorney's Office for the Northern District of Florida and the U.S. District Court for the Northern District of Florida utilizing the official Dept. of Justice email accounts as it pertains to myself and my case. i.e. U.S. v. Antonio U. Akel #3:07-cr-136-CAC-EMT or any variation thereof.

Dkt. 18-1 at 1 (Def.'s SUMF ¶¶ 1–2); *see* Dkt. 18-4 at 2 (Ex. A); Dkt. 18-5 at 2 (Ex. B). On July 24, 2020, the Executive Office for United States Attorneys ("EOUSA"), a component of the Department of Justice, opened a FOIA matter in response to the request and asked the U.S. Attorney's Office for the Northern District of Florida, to search for potentially responsive material. *See* Dkt. 18-1 at 2 (Def.'s SUMF ¶¶ 5, 7); Dkt. 18-2 at 3 (Wilkinson Decl. ¶¶ 5–6).

Anthony Garner, the FOIA contact at the U.S. Attorney's Office, conducted that search, which proceeded in three steps. Dkt. 18-2 at 3 (Wilkinson Decl. ¶ 7); Dkt. 18-3 at 2 (Garner Decl. ¶ 4). He first entered Plaintiff's name into two computerized case-tracking databases: CaseView and PACER (short for "Public Access to Court Electronic Records"). Dkt 18-3 at 2 (Garner Decl. ¶ 4). These queries enabled Garner to identify the relevant attorneys of record: Assistant U.S. Attorneys ("AUSAs") Alicia Forbes and Thomas Swaim—who were the prosecuting attorneys in the case—and Leonard Register—who handled Plaintiff's appeal. *Id.*;

2

*see also* Dkt. 26 at 5–6.  Garner next sent a mass email to all the AUSAs and staff in the U.S.

Attorney's Office, asking them to search for potentially responsive material.  Dkt. 18-3 at 2

(Garner Decl. ¶ 5).  AUSA Forbes replied that she had "maintain[ed] every email related to Mr.

Akel's prosecution in a .pst file" and had searched those files and found no *ex parte*

communications.  *Id.* at 2–3 (Garner Decl. ¶ 6).  AUSA Register responded similarly.  *Id.* at 3

(Garner Decl. ¶ 6).  In addition, two other AUSAs—Robert Davies and Winifred Acosta—

responded that they had worked on Plaintiff's appellate proceedings only and confirmed that

they had engaged in no *ex parte* communications with chambers.  *Id.*  Finally, Garner conducted

a manual and "electronic search" for Plaintiff's full name and case number in "the criminal and

appellate files" at the U.S. Attorney's Office and "found no information or *ex parte* emails with

any district or magistrate judge" regarding Plaintiff's case.  *Id.* (Garner Decl. ¶ 7); *see also* Dkt.

26 at 8.  At no point, however, did Garner obtain any records from files associated with Thomas

Swaim.  By the time of Plaintiff's FOIA request, Swaim was no longer employed with the U.S.

Attorney's Office, *see id.* at 2 (Garner Decl. ¶ 4), and neither Garner nor the EOUSA ever

attempted to recover any of Swaim's emails, *see* Dkt. 26 at 5–6.

Relying on the results of Garner's search, on August 4, 2020, the EOUSA sent Plaintiff a

letter informing him that the Department had completed its search and located no responsive

records.  Dkt. 18-1 at 2 (Def.'s SUMF ¶ 10).  On August 26, 2020, Plaintiff filed an

administrative appeal of the Department's response, *id.* at 3 (Def.'s SUMF ¶ 12), arguing that the

Department's search was inadequate because the Department failed to comply with his request

that the Department "search its official email archival system" for responsive records, Dkt. 1-1 at

8 (Ex. 3).  On September 9, 2020, the Department's Office of Information Policy, which handles

FOIA appeals, notified Plaintiff that it had sustained the EOUSA's search, concluding that the

EOUSA had "conducted an adequate, reasonable search" for responsive records.  Dkt. 18-1 at 3 (Def.'s SUMF ¶¶ 12–13); Dkt. 1-1 at 15–16 (Ex. 4).

On November 9, 2020, Plaintiff initiated the present action challenging the adequacy of the Department's search under FOIA, 5 U.S.C. § 552.  Dkt. 1.  The Department answered the complaint on March 26, 2021, Dkt. 14, and filed a motion for summary judgment on May 14, 2021, Dkt. 18.  On June 10, 2021, Plaintiff filed a cross-motion for summary judgment.  Dkt. 22.  Those motions are now before the Court.[1]

---

[1] In addition to the parties' cross-motions for summary judgment, three other motions are pending before the Court.  On June 10, 2021, Plaintiff filed a motion to take judicial notice of certain publicly filed pleadings in his criminal case in the Northern District of Florida and a judicial misconduct complaint that he filed in the Eleventh Circuit.  Dkt. 22; *see* Fed. R. Evid. 201(c)(2).  Plaintiff asks the Court to judicially notice these pleadings as evidence that, in other judicial proceedings, he has alleged that the prosecutors and district judge involved in his criminal case committed misconduct.  Dkt. 22 at 1.  The Court will deny that motion because the mere fact that Plaintiff has alleged, in other proceedings, that certain officials engaged in misconduct does not bear on the adequacy of the Department's search under FOIA.  On September 15, 2021, Plaintiff filed two further motions: a motion to take judicial notice of the Department's filing in a related case before this Court, Dkt. 31 at 1, 7–8, and a motion for leave to file a surreply to address matters raised in the Department's reply brief, Dkt. 31 at 2–5.  The Court will grant these motions.  Plaintiff asks the Court to judicially notice a status report from a related FOIA proceeding, Dkt. 20 in *Akel v. U.S. Dep't of Justice*, No. 20-cv-1651, in which Plaintiff has requested records from the Department concerning any "complaints or allegations against the professional conduct of former [AUSA] Thomas P. Swaim," Dkt. 31 at 7.  In that status report, the Department represented that it had found responsive records, including "records containing information of interest to the Office of the Inspector General."  Def.'s Status Report at 1, *Akel v. U.S. Dep't of Justice*, No. 20-cv-1651 (Dkt. 20).  Because this information arguably bears on the adequacy of the Department's search in light of its decision not to recover former AUSA Swaim's emails, the Court will grant Plaintiff's motion and will take judicial notice of this filing.  The Court will also grant Plaintiff's motion for leave to file a surreply.  The decision to grant leave to file a surreply is a discretionary one.  *Plunkett v. Dep't of Justice*, 249 F. Supp. 3d 73, 75 n.2 (D.D.C. 2017).  In making this decision, "the Court considers whether the surreply is helpful to the adjudication of the motion for summary judgment and whether the defendant will be unduly prejudiced if the [C]ourt grants leave to allow the surreply."  *Id.*.  Here, because Plaintiff's surreply responds to arguments that the Department appears to have raised for the first time in its reply, *see* Dkt. 26 at 6; Dkt. 31 at 3, the Court concludes that Plaintiff's surreply would be helpful to the adjudication of the motion and would not prejudice the Department.

## II.  LEGAL STANDARD

The Freedom of Information Act supports a fundamental pillar of free society: transparency in government.  FOIA is premised on the notion that "an informed citizenry [is] vital to the functioning of a democratic society" and necessary to "check against corruption and hold the govern[ment] accountable."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  The "general philosophy" of FOIA is "full agency disclosure."  *U.S. Dep't of Def. v. Fed. Labor Rels. Auth.*, 510 U.S. 487, 494 (1994) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 360 (1976)).  Upon receiving a FOIA request, an agency must disclose all responsive records to the requestor unless those records fall within one of nine statutory exemptions.  *Id.*; *see* 5 U.S.C. § 552(b).  "These exemptions are 'explicitly made exclusive' and must be 'narrowly construed.'"  *Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011) (first quoting *EPA v. Mink*, 410 U.S. 73, 79 (1973); and then quoting *FBI v. Abramson*, 456 U.S. 615, 630 (1982)).

FOIA cases are typically resolved on motions for summary judgment under Federal Rule of Civil Procedure 56.  *See Beltranena v. U.S. Dep't of State*, 821 F. Supp. 2d 167, 175 (D.D.C. 2011).  To prevail on a summary judgment motion, the moving party must demonstrate that there are no genuine issues of material fact and that she is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  In FOIA cases, an agency can meet this burden by submitting "relatively detailed and non-conclusory" affidavits or declarations, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and an index of the information withheld, *Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973).  An agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from [FOIA's] inspection requirements."  *Students Against Genocide v. U.S. Dep't of State*, 257

F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).

The Court reviews the agency's decision *de novo*, and the agency bears the burden of sustaining

its action.  5 U.S.C. § 552(a)(4)(B).

An agency confronted with a challenge to the adequacy of its search has the burden of

showing that "it made a good faith effort to conduct a search for the requested records, using

methods which can be reasonably expected to produce the information requested."  *Oglesby v.

Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  To satisfy this burden, the agency must

submit a declaration that "explain[s] in reasonable detail the scope and method of the search [it]

conducted," *Morley v. CIA*, 508 F.3d 1108, 1121 (D.C. Cir. 2007), in order to permit "a court to

determine if the search was adequate," *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890

(D.C. Cir. 1995).  "Summary judgment must be denied 'if a review of the record raises

substantial doubt'" regarding the adequacy of the search.  *DiBacco v. U.S. Army*, 795 F.3d 178,

188 (D.C. Cir. 2015) (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C.

Cir. 1999)).

## III.  ANALYSIS

The Department maintains that it "undertook appropriate efforts to search for responsive

documents" and is therefore entitled to summary judgment on Plaintiff's claims.  Dkt. 18-1 at 8.

Plaintiff responds that the Department's search for responsive records was inadequate for four

reasons: (1) the Department did not search for any emails sent or received by AUSA Thomas

Swaim, Dkt. 23 at 5; (2) the Department did not search the "official Dep[artment] of Justice

email accounts" of any of the AUSAs assigned to his case, *id.* at 2, 5; (3) the Department failed

to disclose any information "about the office's filing system, the search terms used, the type of

search performed, and whether the alleged search was in accord with EOUSA['s] 'Archival and

Retrieval Policy,'" *id.* at 2; and (4) the Department's declarations contain hearsay statements by AUSAs Forbes and Register, *id.* at 6–7.

After considering the record and the parties' arguments, the Court concludes that the Department conducted an adequate search for records, except with respect to the email communications of former AUSA Thomas Swaim.  On that aspect of the Department's search, the Court will grant Plaintiff's cross-motion for summary judgment.  With respect to all other aspects of the search, however, the Court will grant the Department's motion for summary judgment.

**A.** **Former AUSA Thomas Swaim's Emails**

Plaintiff's most promising challenge to the adequacy of the Department's search concerns the Department's failure to search for any email records maintained by former AUSA Thomas Swaim.  *See* Dkt. 23 at 5.  Although "[t]here is no requirement that an agency search every record system," *Oglesby*, 920 F.2d at 68, an agency "cannot limit its search to only one [location] if there are others that are likely to turn up the information requested," *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998).  "[I]f an agency has reason to know that certain places might well contain responsive documents, it is obligated under FOIA to search [those places] barring an undue burden."  *Valencia-Lucena*, 180 F.3d at 327.

The Department admits that it did not seek to recover and search Swaim's emails, even though they are archived in a centralized location.  Dkt. 26 at 6.  The Department offers two reasons why it believes that decision was a reasonable one.  First, the Department asserts that, because AUSA Forbes and AUSA Swaim were co-counsel, they "surely" would have included each other on any *ex parte* communications, and thus searching Swaim's emails would be duplicative.  *Id.*  Second, the Department suggests that searching Swaim's emails would be

"unnecessary and unreasonable" because Plaintiff's request is premised on a "wild conspiracy theory." *Id.* at 1, 5.

Neither of these reasons is persuasive. First, the Court is unconvinced by the Department's assurance that Forbes's emails "surely" would have included any *ex parte* communications sent or received by Swaim. Because it is generally improper for lawyers to communicate with chambers *ex parte* concerning a pending or impending matter, *see* Model Code of Jud. Conduct r. 2.9 (Am. Bar Ass'n 2020); Model Rules of Prof. Conduct r. 3.5(b) (Am. Bar Ass'n 2020), to the extent that any responsive records do exist, there is no reason to assume that an attorney engaged in such conduct would have copied his colleagues. This is not to say that there is reason to believe that anyone from the U.S. Attorneys' Office engaged in improper, *ex parte* communications. But, if anyone did so, common sense does not compel the conclusion that it was a team effort.

The Court is also unmoved by the Department's claim that the incremental burden involved in searching Swaim's emails renders that search unreasonable. The Department argues that it should not be required to expend "considerable . . . resources" "investigating a wild conspiracy theory" for which responsive material "almost certainly does not exist." Dkt. 26 at 1, 6. But there are two problems with this position. First, although the Court must, in assessing reasonableness, balance the cost of an incremental search against the likelihood that the search will return responsive records, *Davis v. Dep't of Just.*, 460 F.3d 92, 105 (D.C. Cir. 2006), the Department's claims of burden are vague. In its reply brief, the Department says only that the burden would be "considerable" and explains that "EOUSA would have to ask DOJ's cyber security staff to become involved . . . to conduct a tightly defined search," after which the request would "go into a queue with a waiting time of approximately a month" before EOUSA could

conduct reviews for responsiveness, withholdings, and legal sufficiency. Dkt. 26 at 6. These general representations come nowhere close to establishing an unreasonable burden.

Second, the Department's argument proves way too much. The relevant question is not whether a FOIA request seeks records that an agency is likely to possess but, rather, whether the agency has looked in those places where responsive records are likely to be found, assuming they do exist. Applying an *a priori* filter based on the agency's good-faith belief that its officers and employees are trustworthy and do not violate legal or ethical norms runs head on into FOIA's promise of transparency. A FOIA requester is entitled to a search and response, even if the response merely affirms that no records of wrongdoing exist.

In this respect, the Department misconstrues what the D.C. Circuit meant in *Campbell* when it explained that an agency need not search a record system if the search is "[un]likely to turn up the information requested" or produce a "marginal return," 164 F.3d at 28 (quotation marks omitted). The point is not that an agency should decide, before even looking, that it is unlikely to possess the records the FOIA requester seeks. Rather, the agency may decline to conduct incremental searches only if the additional location to be searched would not typically be expected to hold the type of material sought or searching that location would be duplicative or overly costly or inconvenient. *See, e.g.*, *Ancient Coin Collectors Guild v. Dep't of State*, 866 F. Supp. 2d 28, 33 (D.D.C. 2012); *McKinley v. Bd. of Governors of the Fed. Rsrv. Sys.*, 849 F. Supp. 2d 47, 55–56 (D.D.C. 2012). If the rule were otherwise, an agency could simply perform an incomplete, "perfunctory search," *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011), and call it a day anytime it believed from the outset that it was unlikely to find any records. FOIA does not permit the agency to cut corners in this way. *Id.*; *cf. Roum v. Bush*, 461 F. Supp. 2d 40, 47 (D.D.C. 2006) (noting approvingly that the "CIA and the

9

FBI diligently searched their files" in response to a FOIA request premised on "inherently unrealistic allegations").

In this case, Plaintiff has requested all emails containing *ex parte* communications concerning his criminal case, and the Department is obligated to conduct a search that is "reasonably calculated" to find such records, if they exist, *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  Since Swaim was one of the two prosecutors in Plaintiff's criminal case, and the Department acknowledges that Swaim's emails have been archived and, therefore, can be recovered and searched, Dkt. 26 at 6, the Department's decision not to search his files renders that portion of the Department's search inadequate.

Accordingly, the Court will grant Plaintiff's cross-motion for summary judgment with respect to this contention and will order the Department to retrieve former AUSA Swaim's archived emails and conduct a reasonable search of those emails for responsive records.

**B.      The Department's Failure to Search Email Archives**

Plaintiff also contends that the Department's search was inadequate because the Department failed to search any "official [Department] email accounts" for responsive records, as Plaintiff specified in his original FOIA request.  Dkt. 23 at 1, 5, 7.  The Department counters that it did, in fact, search for emails from official Department email accounts, albeit only those accounts that it identified as most likely to contain responsive emails.  Dkt. 26 at 5.  The Court concludes that the Department has done enough to meet its burden for summary judgment.

"Although an agency may not ignore a request to search specific record systems when a request reaches the agency before it has completed its search, a search is generally adequate where the agency has sufficiently explained its search process and why the specified record systems are not reasonably likely to contain responsive records."  *Mobley v. CIA*, 806 F.3d 568,

582 (D.C. Cir. 2015) (citation omitted).  "When a request does not specify the locations in which an agency should search, the agency has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal return."  *Campbell*, 164 F.3d at 28.  Plaintiff's initial FOIA request asked the Department to locate "[a]ll *ex parte* communications" concerning his criminal case that "utiliz[ed] . . . official Dept. of Justice email accounts."  Dkt. 18-1 at 1 (Def.'s SUMF ¶ 2).  That request does not specify a location to search; it specifies a category of records.  Plaintiff now asks the Department to search its email archive systems for responsive records, but he first made this request during his administrative appeal, *after* the Department had conducted its search.  *See* Dkt. 1-1 at 12.  Thus, the question before the Court is whether a search of the Office's email archives would be reasonably likely to produce a "marginal return," *Campbell*, 164 F.3d at 28, on top of the searches the Department has already conducted.

The Department maintains that Garner's search methodology was reasonably calculated to produce the requested information.  Garner identified the AUSAs who worked on the case and asked them to search their records for any responsive emails.  Dkt. 18-1 at 13.  Two AUSAs responded that they had saved every email related to Plaintiff's case, searched those files, and found that there were no *ex parte* communications with chambers.  *Id.* at 14.  Two more AUSAs responded that they had only worked on the appeal but added that they did not have any *ex parte* communications with chambers.[2]  *Id.*  Garner also sent an email to the entire office asking for

---

[2] Plaintiff maintains that the Department's decision not to inquire further into the emails of the appellate attorneys was unreasonable, Dkt. 23 at 5, but the Court disagrees.  Since Plaintiff's FOIA request sought only *ex parte* communications between the U.S. Attorney's Office and the *district court* concerning his criminal case, the Department reasonably concluded that it was unlikely to discover responsive records from attorneys who exclusively worked on Plaintiff's appeal or, for that matter, from attorneys who did not work on Plaintiff's case at all.

responsive records, *id.* at 13, and conducted a manual and electronic search of the case files for responsive records, *id.* at 14.

Although Plaintiff does not say it in so many words, he effectively argues that the Department's search methodology was unreasonable because, in his view, the best way to locate responsive records would have been to conduct a search of the Office's email archive system— not rely on attorneys saving emails in their personal files. *See* Dkt. 23 at 1–3, 5. Plaintiff contends that the Office is obligated to retain all emails pursuant to what he calls the "EOUSA's Archival and Retrieval Policy," and so it should have searched that archive as an initial matter, rather than rely on representations from attorneys that they had saved down and searched their own emails. *Id.* at 1–2. The Department responds that the existence of any additional responsive records is conjectural and notes that its declarations are entitled to "a presumption of good faith, which cannot be rebutted by [Plaintiff's] purely speculative claims about the existence and discoverability of other documents," Dkt. 26 at 3 (quoting *SafeCard Servs., Inc.*, 926 F.2d at 1200).

The Department has the better of the argument. Plaintiff's position has two flaws. For one thing, AUSA Forbes and AUSA Register represented that they had saved every email related to Plaintiff's case and discovered no *ex parte* communications after searching those files. Dkt. 18-3 at 2–3 (Garner Decl. ¶ 6). Because those representations are entitled to a presumption of good faith, *SafeCard Servs., Inc.*, 926 F.2d at 1200, there is no reason to believe that a search of Forbes's and Register's archived emails would result in any "marginal return," *Campbell*, 164 F.3d at 28.

Second, it is unclear whether and to what extent the U.S. Attorney's Office for the Northern District of Florida even maintains a readily searchable archive of past email activity.

Plaintiff asserts that the Office is bound by what he calls the "EOUSA Archival and Retrieval Policy," Dkt. 23 at 2 (quotation marks omitted), but he does not produce a copy of this policy, nor does he indicate where the Court can find it.  As proof that the policy exists, however, Plaintiff points to a past FOIA proceeding, in which the Department referenced an EOUSA email archival policy that applies to all local U.S. Attorney's offices.  *See* Dkt. 23 at 7.  In that filing, which Plaintiff attached to his memorandum in opposition, attorneys from the U.S. Attorney's Office for the Central District of Illinois represented that, "[p]ursuant to EOUSA policy, our district's email archival system archives all district email activity for a minimum of three years." *Id.* at 13 (Ex. B).[3]  Plaintiff may be correct, then, that the U.S. Attorney's Office in this case was required to archive its AUSA's emails for a certain period of time.  It should be noted, however, that because Plaintiff's criminal trial took place over thirteen years ago, in 2008, even if the referenced policy does exist, it is likely that any responsive records have long since been deleted.

The Department's declarations could have done more to describe the landscape of its email retention policies to the Court.  The Department, for example, ignores Plaintiff's references to the EOUSA email retention policy; neither the Department's declarations nor its reply brief discusses whether any such policy exists.  Indeed, neither declaration explains whether the U.S. Attorney's Office maintains an archive of the district's email activity and, if so, whether that archive is readily searchable.  Garner does explain in his declaration that he

---

[3] Plaintiff points to an additional part of the EOUSA policy, which provides that "all emails to and from a United States Attorney, Acting United States Attorney, and/or Interim United States Attorney are preserved during the duration of that attorney's term, even if the term exceeds the three-year archival policy."  Dkt. 23 at 7.  That policy plainly is not implicated here, since the attorneys who handled Plaintiff's criminal case were *Assistant* United States Attorneys, not *the* United States Attorney.

conducted an "electronic search," Dkt. 18-3 at 3 (Garner Decl. ¶ 7), but in context that appears to refer to a search of the Department's case files, not of any email archives.

In the end, however, the existence of a searchable email archive is largely beside the point, because the search that the Department conducted in this case was adequate without resort to such an archive (except with respect to former AUSA Swaim, as discussed above).  AUSA Forbes represented that she "maintain[ed] every email related to Mr. Akel's prosecution in a .pst file" and had searched those files and found no *ex parte* communications.  Dkt. 18-3 at 2–3 (Garner Decl. ¶ 6).  Critically, AUSA Forbes is the only member of the U.S. Attorney's Office, besides former AUSA Swaim, whose records are likely to contain responsive material, since she and Swaim were the only two prosecutors who handled Plaintiff's criminal proceedings before the district court.  Thus, any search of an email archive system, beyond the search that the Court has already ordered with respect to former AUSA Swaim, would be "unlikely to produce any marginal return." *Campbell*, 164 F.3d at 28.

Accordingly, except with respect to former AUSA Swaim's emails, the Court will grant the Department's motion for summary judgment and deny Plaintiff's cross-motion for summary judgment.

## C.    Plaintiff's Remaining Arguments

Plaintiff's remaining arguments are unavailing.  Plaintiff faults the Department for failing to disclose anything about "the office's filing system, the search terms used, the type of search performed and whether or not the alleged search was in accord with [the] EOUSA 'Archival and Retrieval policy.'"  Dkt. 23 at 2.  The Court has already discussed the first and last of these claims above.  Setting those aside, Plaintiff's remaining contentions lack merit.  Contrary to Plaintiff's suggestion, the declaration of Anthony Garner describes in sufficient detail how he

identified the attorneys associated with Plaintiff's case, which files and systems he (and other attorneys) searched, and the search terms that they employed in those searches.  *See* Dkt. 18-3 at 2–3 (Garner Decl. ¶¶ 4–7).

Plaintiff also contends that the Court may not rely on any of Garner's descriptions of the searches that Forbes, Register, and others conducted, because the AUSAs did not "submit[] . . . declaration[s]" of their own, and their statements constitute "impermissible [h]earsay."  Dkt. 23 at 6.  This argument, however, misapprehends what Rule 56 requires in FOIA cases.  "An affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply affidavits from each individual who participated in the actual search."  *Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 814 (2d Cir. 1994).  Moreover, the declarant need not himself have participated in the search for records.  *Barnard v. Dep't of Homeland Sec.*, 531 F. Supp. 2d 131, 138 (D.D.C. 2008).  Rather, so long as the "declarant "attest[s] to his personal knowledge of the procedures used in handling [the] request and his familiarity with the documents in question," *Madison Mech., Inc. v. NASA*, No. 99-2854, 2003 WL 1477014, at *6 (D.D.C. Mar. 20, 2003) (first alteration in original) (quotation marks omitted), he satisfies Rule 56's personal knowledge requirement.  *Wisdom v. U.S. Tr. Prog.*, 232 F. Supp. 3d 97, 115 (D.D.C. 2017).  Thus, "[h]earsay is . . . acceptable for FOIA affidavits."  *Id.*  Because Anthony Garner's declaration satisfies these criteria, Plaintiff's argument fails.

**CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED** that Defendant's motion for summary judgment, Dkt. 18, is **GRANTED** in part and **DENIED** in part, and Plaintiff's cross-motion for summary judgment, Dkt. 23, is **GRANTED** in part and **DENIED** in part.  Defendant's motion is **DENIED** and Plaintiff's cross-motion is **GRANTED** with respect to the adequacy of the Department's search for email maintained by former AUSA Swaim.  In all other respects, Defendant's motion is **GRANTED** and Plaintiff's cross-motion is **DENIED**.  It is further **ORDERED** that Plaintiff's motion to take judicial notice of certain filings in the Northern District of Florida and the Eleventh Circuit, Dkt. 22, is **DENIED**, but that Plaintiff's motion for leave to file a surreply and motion to take judicial notice of a filing in a related case, Dkt. 31, are **GRANTED**.  It is further **ORDERED** that Defendant shall conduct a reasonable search of former AUSA Swaim's archived emails and produce any responsive records to Plaintiff on or before April 1, 2022.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  December 30, 2021