UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTONIO U. AKEL,

    *Plaintiff*,

v.

UNITED STATES DEPARTMENT OF JUSTICE,

    *Defendant*.

Civil Action No. 20-3240 (RDM)

## MEMORANDUM OPINION AND ORDER

Plaintiff Antonio Akel is a federal prisoner currently serving a term of 480 months' imprisonment for three 2008 drug and firearms convictions. *See United States v. Akel*, 787 F. App'x 1002, 1004 (11th Cir. 2019). Akel "speculates that the federal prosecutors in his case engaged in inappropriate, *ex parte* communications with the presiding judge over the course of his criminal proceedings." *Akel v. United States Dep't of Just.*, 578 F. Supp. 3d 88, 92 (D.D.C. 2021). To that end, Akel submitted a Freedom of Information Act ("FOIA") request to the U.S. Department of Justice ("Department"), seeking "[a]ll ex parte communications between the U.S. Attorney's Office for the Northern District of Florida and the U.S. District Court for the Northern District of Florida utilizing the official Dept. of Justice email accounts as it pertains to [himself] and [his] case." Dkt. 55-1 at 2-3 (3d Wilkinson Decl. ¶ 6). In an earlier opinion, the Court held that the search the Department conducted in response to that request was deficient because it did not include the archived emails of a former Assistant United States Attorney ("AUSA"), Thomas Swaim, but that the search was otherwise adequate. *Akel*, 578 F. Supp. 3d at 100.

With leave of the Court, Akel then added a second FOIA request to his complaint. *See* Dkt. 33 at 6; Min. Order (7/13/2023). That request is not limited to *ex parte* communications with the court in which he was tried and is thus broader than his first: It requests "[a]ll email communications pertaining to [him] i.e. Antonio Akel (or any variation therefore) or [his] case i.e. 3:07-cr-136-LAC (N.D.FLA) (or any variation therefore) for which are found within" the email accounts of five specified Department of Justice employees. Dkt. 55-1 at 4 (3d Wilkinson Decl. ¶ 10). The Court has yet to address the adequacy of the Department's search in response to that request.

Pending before the Court today are three motions: (1) the Department's renewed motion for summary judgment with respect to Akel's remaining claims, Dkt. 39; (2) Akel's cross-motion for summary judgment, Dkt. 45; and (3) Akel's motion for reconsideration of the Court's decision regarding his first FOIA request, Dkt. 46. For the reasons explained below, the Court will grant in part and deny in part the Department's motion for summary judgment; will deny Akel's cross-motion; and will deny Akel's motion for reconsideration.

## I. BACKGROUND

**A.     First Request**

On June 10, 2020 and July 22, 2020, the Executive Office for United States Attorneys ("EOUSA") received two identical FOIA requests from the Plaintiff Antonio Akel. Dkt. 18-1 at 1 (Defendant's May 14, 2021 Statement of Material Facts as to Which There Is No Genuine Issue ("Def.'s SUMF") ¶ 1).[1] EOUSA's FOIA/Privacy Act staff processes all requests for records that are maintained by EOUSA in Washington D.C. and the 93 U.S. Attorney's Offices

---

[1] This FOIA request was numbered EOUSA-2020-003734. *See* Dkt. 39-1 at 9 (2d Wilkinson Decl. ¶ 31).

nationwide. Dkt. 39 at 6 (Defendant's May 11, 2022 Statement of Material Facts as to Which There Is No Genuine Dispute ("Def.'s 2d SUMF") ¶ 15). Akel's request sought "all *ex parte* communications between the U.S. Attorney's Office for the Northern District of Florida and the U.S. District Court for the Northern District of Florida utilizing the official Dept. of Justice email accounts as it pertains to myself and my case. i.e. U.S. v. Antonio U. Akel #3:07-cr-136-CAC-EMT or any variation thereof." Dkt. 18-1 at 1 (Def.'s SUMF ¶ 2).

Anthony Garner, the FOIA contact at the U.S. Attorney's Office in the Northern District of Florida, was responsible for the search. *Akel*, 578 F. Supp. 3d. at 93. He entered Akel's name into the CaseView and PACER databases; identified the relevant attorneys of record, including prosecuting attorneys Alicia Forbes and Thomas Swaim; sent an email to all AUSAs and staff in the office asking them to search for responsive material; and searched Akel's name and case number in the criminal and appellate files maintained at the office. *Id.* The search turned up no responsive records. *Id.* Garner, however, never located or reviewed any records maintained by Thomas Swaim, who was no longer employed at the Department. *Id.* Akel filed an administrative appeal, which was rejected, and he then brought this suit on November 9, 2020. *Id.*

On December 30, 2021, the Court resolved the first round of summary judgment briefing and concluded that "the Department conducted an adequate search for records, except with respect to the email communications of former AUSA Thomas Swaim." *Id.* at 95. In particular, the Court held that the Department's failure to search Swaim's archived emails rendered the search inadequate, and the Court, accordingly, ordered the Department to retrieve and search those emails. *Id.* at 97. In all other respects, however, the Court granted summary judgment in favor of the Department, concluding that (1) the Department need not otherwise search the

Department's email archives because Swaim was the only relevant custodian who had left the office; (2) the Department sufficiently described the searches conducted; and (3) each AUSA need not submit his or her own affidavit or declaration attesting to the searches they conducted. *Id.* at 97-100.

On January 12, 2022, EOUSA asked its Cyber Security Staff ("CSS") to search Swaim's archived emails, as ordered by the Court. Dkt. 39 at 7 (Def.'s 2d SUMF ¶ 18). CSS searched for any email sent to or from Swaim from January 1, 2007 to June 19, 2008 containing either the name "Akel" or the case number "3:07-cr-136." *Id.* EUOSA chose that date range because Akel's "underlying criminal prosecution was filed on November 5, 2007, and [Akel] was sentenced on June 19, 2008." *Id.* at 7-8 (Def.'s 2d SUMF ¶ 18). CSS reported that email archives are not normally maintained by the Department for more than three years unless they involve a U.S. Attorney, political appointee, or there is a litigation hold. *Id.* at 8 (Def.'s 2d SUMF ¶ 19). CSS nonetheless conducted the search, and it reported that no responsive records were located. *Id.* (Def.'s 2d SUMF ¶ 20).

On February 14, 2023, the Department informed the Court that "EOUSA has determined that a supplemental search is indicated [for Swaim's emails] from January 1, 2007 until present." Dkt. 54 at 2. "On February 9, 2023, EOUSA asked CSS to conduct a search that [was] identical to the first, but with a date range of January 1, 2007 to the present." Dkt. 55-1 at 7 (3d Wilkinson Decl. ¶ 22). "On February 15, 2023, the CSS staff reported that their search located no responsive material." *Id.* (3d Wilkinson Decl. ¶ 23). "Furthermore, they contacted the legal hold team who advised that AUSA Swaim does not have a litigation hold status on his account. As such, in accordance with records retention policies, any records in that account would be purged after the passage of three years." *Id.*

4

## B.    Second Request

On March 17, 2021—approximately four months after the commencement of this action—Akel submitted a second FOIA request to EOUSA ("EOUSA-2021-001724"). Dkt. 39 at 4 (Def.'s 2d SUMF ¶ 3 & n.1). That request sought:

> [A]ll email communications pertaining to myself i.e. Antonio Akel (or any variation thereof) or my case i.e. 3:07-cr-136-LAC (N.D.FLA) (or any variation thereof) for which are found within the five following email accounts:
>
> i.      alicia.forbes@usdoj.gov
> ii.     len.register@usdoj.gov
> iii.    thomas.swaim@usdoj.gov
> iv.     robert.davies@usdoj.gov
> v.      winifred.acosta@usdoj.gov

*Id.* (Def.'s 2d SUMF ¶ 3). Unlike Akel's first FOIA request, this request was not limited to *ex parte* communications sent to or received from the court in which he was tried. *Id.*; *see also* Dkt. 39-1 at 12-13 (March 1, 2021 FOIA request).

In response, EOUSA asked the U.S. Attorney's Office for the Northern District of Florida ("USAO-FLN") to conduct a search for potentially responsive records. Dkt. 39 at 4 (Def.'s 2d SUMF ¶ 4). USAO-FLN again queried the CaseView and PACER databases to identify the case number and attorneys of record. *Id.* at 4 (Def.'s 2d SUMF ¶ 5). That search identified AUSAs Alicia Forbes, Len Register, Winifred Acosta, and Robert Davies as assigned either to the prosecution or to the appeal. *Id.* In addition, USAO-FLN sent a mass email to all AUSAs and staff in that office asking them to search for potentially responsive records. *Id.* at 4-5 (Def.'s 2d SUMF ¶ 5). USAO-FLN also located and searched all "prosecution and appellate files." *Id.* at 5 (Def.'s 2d SUMF ¶ 7).

On July 30, 2021, USAO-FLN certified that it had completed its search, and it transmitted 160 pages of potentially responsive records to EOUSA. *Id.* at 5 (Def.'s 2d SUMF ¶ 8). An USAO-FLN official attested under the penalty of perjury that the office had searched

"the case file for CR#07cr-136-LAC-MCR, its internal database, CaseView, and emails of the relevant parties, as well as public databases such as U.S. District Court files and LexisNexis Courtlink." *Id.* (Def.'s 2d SUMF ¶ 8).  On July 29, 2021, EOUSA sent Akel a response releasing forty-nine pages in full, eighty-two pages in part, and withholding twenty-nine pages in full. *Id.* (Def.'s 2d SUMF ¶ 10).  EOUSA invoked Exception 6 and a court's sealing order in support of its withholdings.  *Id.*; *see also* Dkt. 39-1 at 32-33.

Among the released records were three *ex parte* communications between USAO-FLN and court staff, as follows:

> a. On May 7, 2020, a Court Clerk staff member emailed USAO-FLN to inform the Attorneys of Record that the Pre-Sentence Report and Sentencing Memorandum were being sent to Plaintiff.  This record was released to Plaintiff in full.
>
> b. On January 29, 2021, AUSA Alicia Forbes emailed a Court Clerk staff member seeking Judge Collier's Determination Memo as it relates to Plaintiff's 3582 motion under Amendment 782.  The Clerk responded by transmitting the 2015 memo.  The substance of this communication was released to Plaintiff for this request—only personal information of AUSA Forbes was withheld.
>
> c. Also on January 29, 2021, AUSA Alicia Forbes emailed a Court Clerk staff member to determine whether the Court was expecting a Government reply to Plaintiff's 3582 motion.  This record was released to Plaintiff in full.

Dkt. 39 at 5-6 (Def.'s 2d SUMF ¶ 11) (internal citations omitted).

Dissatisfied with the response he received to his second FOIA request, on January 7, 2022, Akel moved for leave to supplement his complaint to add a claim challenging the Department's response to that request, s*ee* Dkt. 33, which the Court granted, Min Order (07/13/2022).

C.     **Pending Motions**

On May 11, 2022, the Department renewed its motion for summary judgment with respect to Akel's first FOIA request and moved for summary judgment with respect to his second FOIA request. In this combined motion, the Department argues (1) that it has now conducted an adequate search of Swaim's archived emails, as required by the Court's prior decision, and (2) that it conducted an adequate search for records in response to Akel's second FOIA request and has release all non-exempt, responsive records. *See* Dkt. 39.[2] The Department argues that its withholdings are premised on Exemption 6 and a court order requiring that certain records remain under seal. *Id.* at 23-26.

Akel opposes that motion. *See* Dkt. 44. In that response, he "takes no issue with any of the defendants['] exemptions in withholding documents but," instead, maintains that "neither the defendants['] pleadings [n]or the Second Declaration of J. Wilkinson [is] reasonably detailed enough to allow the plaintiff to challenge the procedures utilized." *Id*. at 1. Akel then explains what he means by this, arguing that the Department has failed to "'[d]enote which files were searched,'" "by whom these files were searched," or what "systematic approach" was taken to locating potentially responsive records. *Id.* As to his first FOIA request, Akel argues that the Department inappropriately narrowed its search to encompass only the time frame of his underlying prosecution. *Id.* at 2. Finally, Akel contends that the Department is no longer entitled to rely on the presumption of good faith because it "misled the Court" by narrowing the time frame of that search. *Id.* at 5.

---

[2] Also included in the Department's motion was its opposition to Akel's earlier motion to amend or alter the judgment (Dkt. 36) and his motion to amend the Complaint (Dkt. 33). *See* Dkt. 39 at 1. The Court has already denied Akel's motion to alter or amended the judgment, (Min. Order 07/05/2022), and granted his motion for leave to supplement the Complaint to add allegations regarding the Department's response to Akel's new FOIA request (Min. Order 7/13/2022).

Akel also cross-moves for summary judgment. *See* Dkt. 45. In that motion, he argues that (1) with respect to his first FOIA request, the Department erred by limiting the scope of the search to the time frame of his prosecution, and (2) with respect to his second FOIA request, the Department "did nothing beyond making conclusory assertions about the thoroughness of the search." *Id.* at 2-4. In response, the Department asserts that its search parameters with respect to Akel's first request were reasonably calculated to locate responsive records and that its description of the search that it undertook with respect to Akel's second request provides sufficient detail to conclude that the search was adequate. *See* Dkt. 52 at 3-8.

Finally, Akel renews his motion to "reopen the judgment" set forth in Court's earlier Memorandum Opinion and Order. *See* Dkt. 46. (The Court denied Akel's first motion to alter or amend the judgment, Dkt. 36, on July 5, 2022, *see* Min. Order (7/5/2022)). In this motion, Akel argues that "[D]efendant obtained summary judgment" the first time "by the use of manipulation, evasive tactics, misrepresentation and outright mendacity, i.e. fraud." Dkt. 46 at 1. In particular, he maintains that in its prior motion for summary judgment, the Department incorrectly represented that it had searched every email related to Akel's prosecution when, in fact, it limited its search to "records that were contemporaneous to [his] prosecution." Dkt. 39-1 at 5 (2d Wilkinson Decl. ¶ 15); *see also* Dkt. 46 at 1-3. Akel contends that the Department's concession that it limited its first search in this manner requires revisiting the Court's earlier opinion. *Id.* at 4. The Department opposes this motion, arguing that Akel has failed to meet the Federal Rule of Civil Procedure 60(b) standard. Dkt. 52 at 8-11.

After numerous delays in the parties' briefing, all three motions are now ripe for decision. The Court will first address whether the Department has now met its obligations with respect Swaim's emails, as required by the Court's prior opinion; it will then turn to the question

8

whether the Department has satisfied its obligations as to Akel's second FOIA request; and, finally, the Court will address whether Akel has satisfied his burden of establishing sufficient cause for the Court to revisit the issues resolved in its prior opinion.

## II.  LEGAL STANDARD

FOIA cases are typically resolved on motions for summary judgment under Federal Rule of Civil Procedure 56.  *See Beltranena v. U.S. Dep't of State*, 821 F. Supp. 2d 167, 175 (D.D.C. 2011).  To prevail on a summary judgment motion, the moving party must demonstrate that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In FOIA cases, an agency can meet this burden by submitting "relatively detailed and non-conclusory" affidavits or declarations, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal citation and quotation marks omitted), and an index of the information withheld, *Vaughn v. Rosen*, 484 F.2d 820, 827-28 (D.C. Cir. 1973).  An agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from [FOIA's] inspection requirements.'"  *Students Against Genocide v. U.S. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).  The Court reviews the agency's decision *de novo*, and the agency bears the burden of sustaining its action.  5 U.S.C. § 552(a)(4)(B).

An agency confronted with a challenge to the adequacy of its search has the burden of showing that "it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  To satisfy this burden, the agency must submit a declaration that "explain[s] in reasonable detail the scope and method of the

9

search [it] conducted," *Morley v. CIA*, 508 F.3d 1108, 1121 (D.C. Cir. 2007) (internal citation and quotation marks omitted), in order to permit "a court to determine if the search was adequate," *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (internal citation and quotation marks omitted). "Summary judgment must be denied 'if a review of the record raises substantial doubt'" regarding the adequacy of the search. *DiBacco v. U.S. Army*, 795 F.3d 178, 188 (D.C. Cir. 2015) (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)).

### III.  ANALYSIS

**A.  Former AUSA Thomas Swaim's Emails**

The Court starts with the question whether the Department has now remedied the deficiency in its search identified in the Court's prior decision—that is, the Department's failure to locate or search Swaim's archived emails. In addition to that omission, Akel also correctly points to a second, related error—that the Department unreasonably limited its search to records created "contemporaneous[ly]" with Akel's prosecution. Dkt. 46 at 2. Akel now asks the Court to compel the Department to search Swaim's archived emails from June 19, 2008 until the date of Swaim's retirement using the terms "Akel" and case number "3:07-cr-136." Dkt. 44-1 at 1-2; *see also* Dkt. 45 at 2-3. Framed in that manner, the search would address the deficiencies in the earlier search and would also cover Akel's second FOIA request to that extent that request singles out Swaim's email account as one of the five targeted accounts.

According to the Department, it has now done what Akel asks. Wilkinson attests in his third declaration that CSS previously searched for any archived "email[s] sent to or from AUSA Swai[m]—including the "Cc" and "Bcc" fields—from the dates of January 1, 2007, to June 19, 2008, that included either the name 'Akel' or the case number '3:07-cr-136.'" Dkt. 55-1 at 6 (3d

Wilkinson Decl. ¶ 19). He further explains that EOUSA has since asked CSS "to conduct a search that is identical to the first, but with a date range of January 1, 2007 to the present." *Id.* at 7 (3d Wilkinson Decl. ¶ 22). According to Wilkinson, CSS "reported that their search located no responsive material" and confirmed that "any records in [Swaim's] account would [have been] purged after the passage of three years" in accordance with the Department's records retention policies as there was no litigation hold in Swaim's account. *Id.* (3d Wilkinson Decl. ¶ 23).

At this point, there is nothing left for the Court to order the Department to do regarding Swaim's emails. Akel claims that "the Defendant must search the rest of AUSA Swaim[']s emails from June 19, 2008 until the date of his retirement pursuant to the request, statute and binding rule of law utilizing the same search terms, *i.e.* 'Akel' and the case number '3:07-cr-136.'" Dkt. 44-1 at 2. Wilkinson attests, under the penalty of perjury, that the Department has now done so. Dkt. 55-1 at 7 (3d Wilkinson Decl. ¶¶ 22-23). Because the Court can order no further relief with respect to the search of Swaim's emails, the Court will grant summary judgment in the Department's favor with respect to this aspect of Akel's first and second FOIA requests.

**B.     Remaining Portions of Akel's Second FOIA Request**

Akel's challenge to the remainder of the Department's response to his second FOIA request is a narrow one. He does not dispute any of the withholdings, but, instead, argues that the Department has failed to offer sufficient detail to establish that it conducted an adequate search. Dkt. 44 at 1. He argues, in particular, that the Department has failed to indicate for each of the five identified email addresses: (1) who performed the relevant search; (2) whether the search terms "Akel" and "3:07-cr-136-LC" were used; and (3) whether the emails were searched

11

from November 2007 through the present day.  Dkt. 44-1 at 2-3; *see also* Dkt. 45 at 3.  The Court agrees in part and disagrees in part.

"To demonstrate that it has performed an adequate search, an agency must submit a reasonably detailed affidavit describing the search." *Jackson v. United States Dep't of Just.*, 270 F. Supp. 3d 90, 95 (D.D.C. 2017).  "An affidavit is 'reasonably detailed' if it 'set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched.'" *Id.* (quoting *Oglesby*, 920 F.2d at 68).  "An agency's declarations 'need not set forth with meticulous documentation the details of an epic search for the requested records.'" *Id.* (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009)).  "[B]ut they should 'describe what records were searched, by whom, and through what processes.'" *Id.* (quoting *Defs. of Wildlife*, 623 F. Supp. 2d at 91).  "Conclusory assertions about the agency's thoroughness are not sufficient." *Id.*

As an initial matter, the Court is persuaded that the Department has identified *who* conducted the relevant searches.  According to the third Wilkinson declaration, the USAO-FLN FOIA contact, Anthony Garner, emailed USAO-FLN staff and AUSAs asking them to search for potentially responsive material.  Dkt. 55-1 at 4 (3d Wilkinson Decl. ¶ 12).  In other words, each AUSA still employed in the office searched his or her own emails for responsive records.  As to Swaim, who had left the office by the time the searches were conducted, the Wilkinson declaration explains that CSS performed the required search.  *Id.* at 6-7 (3d Wilkinson Decl. ¶¶ 18-23).  Finally, Wilkinson attests that Garner "searched both the USAO prosecution and appellate files." *Id.* at 5 (3d Wilkinson Decl. ¶ 14).

The third Wilkinson declaration is less clear about whether each such search included the search terms "Akel" and "3:07-cr-136-LC."  The declaration does attest that "CSS was asked to

12

search for any email sent to or from AUSA Swaim . . . that included either the name 'Akel' or the case number '3:07-cr-136,'" and that CSS subsequently "reported to EOUSA that its search was complete." *Id.* at 6-7 (3d Wilkinson Decl. ¶¶ 19, 21); *see also id.* at 7 (3d Wilkinson Decl. ¶¶ 22-23) ("EOUSA asked CSS to conduct a search that is identical to the first, but with a date range of January 1, 2007 to the present."). In contrast, however, the declaration omits any such assurance with respect to the other email accounts. The Department, nonetheless, asks the Court to infer that the searches conducted of each of the four remaining accounts included both terms. It argues that "[b]ecause Plaintiff included the above search terms in his FOIA request, the affidavit does not need to specify that the search was conducted with those terms," Dkt. 52 at 7, and that "USAO-FLN certified that its search was complete," Dkt. 55-1 at 5 (3d Wilkinson Decl. ¶ 15).

The Court is unpersuaded for two reasons. First, the third Wilkinson declaration does not indicate whether the individual AUSAs, who were asked to search their own email accounts, ever received a copy Akel's second FOIA request. Instead, it merely asserts that Garner "sent a mass email to all USAO-FLN staff and Assistant U.S. Attorneys asking that they search for potentially-responsive material." Dkt. 55-1 at 3 (Wilkinson Decl. ¶ 8). Without further detail about what Garner said in that "mass email" or some assurance that he provided the recipients with a copy or description of Akel's second FOIA request, the Court cannot infer that each recipient was on notice of the requested search terms. Second, to prevail on summary judgment in a FOIA case, an agency must offer a sufficiently detailed, non-conclusory description of its search to permit the Court to determine for itself whether the search was adequate. *See Morley*, 508 F.3d at 1121. Yet, here, all that Wilkinson tells the Court is that the individual AUSAs were asked to search for "potentially-responsive material" and that an unnamed person from the U.S.

13

Attorney's Office certified that the search was "complete."  Dkt. 55-1 at 4-5 (3d Wilkinson Decl. ¶¶ 12, 15).  If the Court is to take its duty to undertake an independent assessment of the adequacy of the search seriously, such a barebones declaration cannot suffice.

Although a close question, the Court is persuaded that the Department has carried its burden of demonstrating that it applied an appropriate date range to the searches that it conducted in response to Akel's second FOIA request.  As with the relevant search terms, the third Wilkinson declaration clearly establishes that the Department applied "a date range of January 1, 2007 to the present" to its search of Swaim's emails.  *Id.* at 7 (3d Wilkinson Decl. ¶ 22).  Wilkinson also attests, more generally, that "the time scope of the search for" records responsive to the second FOIA request "was not limited in any way" and that the search included "all material that was maintained by [USAO-FLN] up to the date of the search."  *Id.* at 5-6 (3d Wilkinson Decl. ¶ 17).  Although the Court remains concerned about the lack of detail regarding the instructions that Garner provided in his "mass email," two factors support the conclusion that their searches included the broader date range.  First, as Wilkinson explains in his second declaration, the search conducted in response to Akel's second FOIA request located three recent, *ex parte* communications with Akel's trial court, which were not located in the earlier search conducted in response to his first FOIA request because that search utilized the narrower date range.  Dkt. 39-1 at 4-5 (2d Wilkinson Decl. ¶¶ 14-15).  Each of those records was created long after the narrower date range used to conduct the first search, and each was relatively recent—one from May 2020 and two from January 2021.  *Id.*  Had the USAO-FLN staff used the narrower date range, they would not have located these records.  Second, as described in the third Wilkinson declaration, Garner's email merely asked the recipients to search for

14

"potentially-responsive material," without specifying a date range. Dkt. 55-1 at 4 (3d Wilkinson Decl. ¶ 12).

Finally, Akel argues that the Department is no longer entitled to rely on the presumption of good faith as to its declarations. An agency's declaration is accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims." *SafeCard Servs.*, 926 F.2d at 1200 (citation and internal quotation marks omitted). Akel argues that the presumption no longer applies here because, in performing its first search, the Department looked for records contemporaneous to Akel's prosecution instead of searching all of their emails for responsive records. *See* Dkt. 44 at 4-5. The Court is unpersuaded. When asked to search for *ex parte* communications related to a criminal case, it was not unreasonable for the Department to search for emails they may have sent around the time of the prosecution. And, more importantly, when the Department learned that its date range was too narrow, it conducted a supplemental search and released the non-exempt records that it located. Nothing in this scenario suggests that the Department was attempting to hide responsive records or that it was otherwise acting in bad faith.

Because the Department has failed to describe the searches undertaken by the individual attorneys and staff in response to Akel's second FOIA request with sufficient detail to permit judicial review, the Court must deny both the Department's motion for summary judgment and Akel's cross-motion for summary judgment respecting this search. The Department may be able to rectify this flaw in its motion without great difficulty. But agencies and their counsel can save themselves, FOIA requesters, and the courts substantial effort by taking the time to prepare sufficiently detailed declarations (and *Vaughn* indices) the first time, rather than waiting to be directed to do so.

15

## C. Motion to Reopen the Judgment

Akel also moves for reconsideration of the Court's earlier decision, *Akel v. United States Dep't of Just.*, 578 F. Supp. 3d 88 (D.D.C. 2021). Dkt. 46. Although he brings that motion pursuant to Federal Rules of Civil Procedure 60(b)(2) and 60(b)(3), those rules apply only after the Court has entered final judgment. Fed. R. Civ. P. 60(b) ("[T]he court may relieve a party or its legal representative from a *final* judgment.") (emphasis added). And while the Court did grant the Department's first motion for summary judgment in part, it did not enter final or partial final judgment. As a result, Akel's motion for reconsideration is properly considered under Rule 54(b), which provides that any interlocutory "order or other decision, however designated, that adjudicates fewer than all the claims . . . does not end the action as to any of the claims . . . and may be revised at any time before entry of a judgment adjudicating all the claims . . . ." Fed. R. Civ. P. 54(b). *See Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744 (1976) ("[G]rant[s] of partial summary judgment . . . are by their terms interlocutory . . . .").

The standard for reconsidering an interlocutory decision is "as justice requires." Fed. R. Civ. P. 60(b) advisory committee's note to 1946 amendment; *see also Childers v. Slater*, 197 F.R.D. 185, 190 (D.D.C. 2000). This standard "leave[s] a great deal of room for the court's discretion" and "amounts to determining 'whether reconsideration is necessary under the relevant circumstances.'" *Williams v. Savage*, 569 F. Supp. 2d 99, 109 (D.D.C. 2008) (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)). Courts exercise this discretion "subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (internal citation and quotation marks omitted). "In the absence

16

of more specific appellate authority, many district courts in this Circuit have employed the following standard:"

> Justice may require revision when the Court has patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts has occurred since the submission of the issue to the Court. Errors of apprehension may include a Court's failure to consider controlling decisions or data that might reasonably be expected to alter the conclusion reached by the court.

*Castañon v. United States*, No. 18-cv-2545, 2020 WL 5569943, at *2 (D.D.C. Sept. 16, 2020) (three-judge court) (quoting *Singh*, 383 F. Supp. 2d at 101). The party seeking reconsideration bears the burden of demonstrating that it is warranted. *Pueschel v. Nat'l Air Traffic Controllers' Ass'n*, 606 F. Supp. 2d 82, 85 (D.D.C. 2009).

According to Akel, reconsideration is warranted here for two reasons: First, even though the Department previously attested that it had conducted an adequate search for any *ex parte* communications between USAO-FLN and the trial court, the Department now concedes that it applied an overly narrow date range and that its search was therefore inadequate. Dkt. 46 at 3. Second, the Department allegedly "misled both" the Court "and the Plaintiff into believing that 'Every email related to Plaintiff's case'" was searched. *Id.* at 4.

For the reasons explained above, the Court is unpersuaded that the Department intentionally misled the Court or that it otherwise engaged in any misconduct. Nor would reconsideration serve any purpose at this point. As explained above, the Department has already conducted the search that Akel asks the Court to compel with respect to his first FOIA request and has released all non-exempt records that it located. For relief, moreover, Akel "implores th[e] Court to order the [Department] to search the [same] five . . . email accounts" specified in his second FOIA request for any *ex parte* communications with the trial court. *Id.* at 5. But the

17

Department has already done so, and, to the extent any question exists regarding the particular search terms that each individual AUSA used, the Court has already denied the Department's motion for summary judgment. As a result, one of two things is true: either the Department has already conducted the required search or, if any of the AUSAs did not use the proper search terms, the Department will be required to conduct a further search. Either way, there is nothing left for the Court to do at this point, and the Court cannot conclude that "justice requires" that it reconsider its prior decision.

The Court will, accordingly, deny Akel's motion to reopen the judgment, Dkt. 46.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** in part and **DENIES** in part the Government's motion for summary judgment, Dkt. 39; **DENIES** Akel's cross-motion for summary judgment without prejudice, Dkt. 45; and **DENIES** Akel's motion to reopen the judgment, Dkt. 46.[3]

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: March 21, 2023

---

[3] In his Motion for Leave to Supplement FOIA Request # EOUSA-2021-001724, Akel added a request for "monetary compensation in the amount of $15,000,000.00 or the maximum allowed by law on the basis of the intentional infliction of emotional and mental distress brought about by the undue delay and deliberate mendacity sanctioned by the U.S. Dept. of Justice in its effort to impede the F.O.I.A. process." Dkt. 33 at 7. "It is well-settled that monetary damages are not available under FOIA," *Ross v. United States*, 460 F. Supp. 2d 139, 151 (D.D.C. 2006), and the Court, accordingly, will *sua sponte* **DISMISS** that claim.